(952 P.2d 941)
No. 78,528

LORETTA COLOMBEL, *Appellant*, v. KAY MILAN and ALLEN MILAN, *Defendants,* and MICHAEL DODSON and KIERSTEN DODSON, *Appellees.*

Opinion filed January 23, 1998.

*Dennis L. Horner* and *Kathleen M. Lynch*, of Horner and Duckers, Chartered, of Kansas City, for appellant.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellees.

Before BRAZIL, C.J., ELLIOTT and GERNON, JJ.

BRAZIL, C.J.: In this appeal, we are considering the liability of a landlord for injuries to a plaintiff bitten by a dog owned by the tenants.

Loretta Colombel sued the tenants, Kay and Allen Milan, and the landlords, Michael and Kiersten Dodson.

The trial court dismissed the case against the Dodsons. Colombel appeals. We affirm.

Colombel suffered severe and permanent injury and disability as a result of an attack by the Milans' dog at their residence. Colombel brought suit against the Dodsons as landlords, alleging that they had knowledge of the dangerous and vicious propensities of the Milans' dog. Colombel claims that the Dodsons were negligent in allowing the dog to be maintained on their property.

Our standard of review of a grant of a motion to dismiss for failure to state a claim has recently been stated in *Ripley v. Tolbert*, 260 Kan. 491, Syl. ¶¶ 1, 2, 921 P.2d 1210 (1996):

"Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.

"In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself."

In addition, "it is our duty to determine whether those pleaded facts and inferences state a claim, not only on the theory which may be espoused by the plaintiffs, but on *any possible theory* we can divine." *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 231, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991).

Whether Colombel stated any valid claim for relief depends upon whether a landlord may be held liable under Kansas law for the injuries a third party suffers due to the actions of his or her

tenants' vicious dog on the leased property. To recover in a negligence action, the plaintiff must prove a duty was owned by the defendant to the plaintiff, a breach of that duty, and that the breach of duty was the proximate cause of damages sustained by the plaintiff. The existence of a duty is a question of law, subject to unlimited review by this court. *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, Syl. ¶ 3, 940 P.2d 84, *rev. denied* 262 Kan. 959 (1997).

The Dodsons contend that the law to be applied to this case is the law of injury-by-animal and not the law of premises liability. They argue that they cannot be held liable for the injury inflicted by their tenants' dog since under the law of torts pertaining to injury-by-animals, only the owner or keeper of the animal can be held liable. In addition, they argue that even if the law of premises liability were to apply to the present case, they would not be liable because none of the exceptions to the rule exempting landlords from liability for injuries occurring on the leased premises apply. Colombel admits that as a general rule there is no liability placed upon a landlord for injuries occurring due to defective conditions on leased property. However, she urges us to hold that when a landlord knows that his or her tenant owns a vicious animal, the landlord has a duty to remove the animal by terminating the lease.

The leading case in Kansas on the subject of landlord liability for premises defects is *Borders v. Roseberry*, 216 Kan. 486, 532 P.2d 1366 (1975). In *Borders,* a social guest of a tenant slipped and fell on ice that had accumulated on the front steps of the leased property. In that case, our Supreme Court adopted the rule that when a landlord is not in possession of the leased property, he or she has a very limited duty to the tenant or to third persons entering the land for defective conditions existing thereon. 216 Kan. at 488.

However, the *Borders* court recognized that there are several exceptions to the general rule of nonliability of landlords for premises defects. 216 Kan. at 488-92. Liability may be imposed upon the landlord in the following situations:

(1) when there are dangerous conditions known to the lessor and unknown to the lessee;

(2) when there are conditions dangerous to persons outside of the premises;

(3) when the premises are leased for admission of the public;

(4) when parts of the land are retained in the lessor's control which the lessee is entitled to use;

(5) when the lessor contracts to repair the premises; and

(6) when the lessor is negligent in making repairs.

Colombel argues that the theory of liability behind the exception holding the landlord liable for conditions dangerous to persons outside of the leased premises is applicable to the present case.

This exception does not apply in the present case because Colombel has only alleged that the dog attacked her and another neighbor on the property; she has not alleged that it is dangerous to those outside of the leased property. Although the Dodsons may have known of the existence of the allegedly vicious dog at the time the lease was entered into, there are no cases in Kansas where a dog is considered a structural defect. None of the other exceptions that have been recognized in Kansas to the general rule that the landlord is not liable for injuries that occur on the leased property or for the torts of his or her tenants have been alleged to apply to this case. If premises liability were to apply to this case, the landlord would not be held liable unless a new exception is created.

The Restatement (Second) of Torts § 509(1) (1976) applies to the possessors of a dangerous animal, providing:

"A *possessor* of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm." (Emphasis supplied.)

According to the Restatement, harborers of vicious animals can also be held liable for injuries inflicted by them. Section 514 of the Restatement states:

"One who, although not in possession, harbors a wild animal or an abnormally dangerous domestic animal, is subject to the same liability as if he were in possession of it."

Comment a explains the act of harboring as follows:

"Thus a person harbors a dog or cat by permitting his wife, son or household servant to keep it in the house or on part of his land that is occupied by the family as a group. On the other hand, the possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal. Thus a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept. The same is true when a master permits his servant to keep a dog in a house or part of the premises that is given over to the exclusive occupation of his servant. So, too, he does not become a harborer of a dog that he permits a friend to keep on his land unless he takes it into his home and thus makes it, as it were, a member of his household." Restatement (Second) of Torts § 514 Comment a.

The Restatement definition of harboring appears to preclude liability of a landlord since even a parent who gives permission to a child to keep a vicious dog on land owned by that parent cannot be held liable for the injuries inflicted on a third person by that dog. Even though the owner of the land has the power to expel an abnormally dangerous animal and chooses not to do so, under the Restatement, he or she is not made a harborer of the animal and therefore liable for its acts.

Kansas follows the common law of injury-by-animal. Under the common law, no one but an owner, possessor, keeper, or harborer of an animal can be held liable for it actions. In the present case, the Dodsons were not possessors, harborers, owners, or keepers of the dog. Under Kansas law as it now stands, they cannot, therefore, be found liable for the injury caused by the dog.

Furthermore, in Kansas, the landlord is not the insurer of the safety of the tenant and third persons. *Borders*, 216 Kan. at 488. There are no cases in Kansas imposing liability on a landlord for the injuries inflicted upon a third person by a tenant's dog. Rather, in Kansas we have a rule which restricts such liability. This rule is based on the idea that when a landlord leases premises to a tenant, the landlord relinquishes possession and control of the premises. *Borders*, 216 Kan. at 488. As discussed above, this rule is subject to several exceptions, none of which apply to the case at bar. Under

the law in Kansas as it is now, Colombel failed to state a claim upon which relief can be granted.

Affirmed.